469 So.2d 994 (1985)
LOUISIANA STATE OPTICAL OF JEFFERSON PARISH, INC.
v.
LOUISIANA STATE OPTICAL OF KENNER, INC.
No. 84-CA-530.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 1985.
Rehearing Denied June 17, 1985.
*995 Patrick C. Leitz, Metairie, for plaintiff-appellee.
McHale, Bufkin & Dees, Michael K. Dees, Lake Charles, for defendant-appellant.
Before CHEHARDY, KLIEBERT and GRISBAUM, JJ.
CHEHARDY, Judge.
This lawsuit arose from a dispute over the use of a trade name and a trade mark. The trial judge rendered a judgment granting preliminary injunctions to both parties, under which the plaintiff, Louisiana State Optical of Jefferson Parish, Inc., would be allowed to use the trade name "Louisiana State Optical" and the trade mark "LSO," boxed-in vertically, only in that part of Jefferson Parish east of the Mississippi River and the defendant, Louisiana State Optical of Kenner, Inc., would be allowed to use the trade name and trade mark only in that part of Jefferson Parish west of the Mississippi River. Defendant has appealed, seeking to have plaintiff prohibited from any use of the name "Louisiana State Optical" and the trade mark "LSO." Plaintiff has neither appealed nor answered the appeal.
Plaintiff first began using its name on May 1, 1979 when it opened its eyeglass dispensary store for business. It was the first to use the name "Louisiana State Optical" in the greater New Orleans area. In October 1983 defendant, Louisiana State Optical of Kenner, Inc., opened an eyeglass dispensary in Kenner, Louisiana, approximately five miles away from plaintiff's store, which is located on Veterans Boulevard in Metairie, Louisiana. It also began advertising its store as "Louisiana State Optical".
On October 24, 1983 counsel for J.C. Perroncel, majority stockholder of defendant, sent a letter to Herbert Denmark, majority stockholder of plaintiff, warning Denmark he was infringing on Perroncel's rights to the trade name and trade mark. Denmark was advised that Perroncel owned the trade name and trade mark, that Perroncel had withdrawn the permission to use them he had previously issued to Denmark, and that legal action would be taken if Denmark did not desist use. In response, plaintiff filed this suit on November 2, 1983.
The plaintiff sought an injunction to prevent defendant from using the trade name "Louisiana State Optical" and the trade *996 mark letters, "LSO" boxed-in. Plaintiff alleged defendant's advertisements were almost identical to plaintiff's, which employed these devices. Defendant filed a reconventional demand, seeking an injunction to prevent plaintiff from using the trade name and trade mark. Defendant alleged it had first right to use these because defendant's incorporator, John C. Perroncel, had used the name and mark elsewhere in the state prior to plaintiff's use.
In addition, John C. Perroncel and Louisiana State Optical of Lake Charles, Inc. intervened in the suit on behalf of defendant. They alleged that Perroncel was the owner of the trade name "Louisiana State Optical" and the trade mark "LSO," that Louisiana State Optical of Lake Charles, Inc. was the owner of the trade name "Louisiana State Optical of Jefferson Parish, Inc.," that defendant was using the name "Louisiana State Optical" and the trade mark by their permission and that plaintiff had no right to use them.
The testimony at trial established that the Denmark and Perroncel families had been friends for over 30 years prior to the lawsuit. Some time in 1977 J.C. Perroncel began operating a store selling eye glasses and related services in Lake Charles. On September 1, 1978 he incorporated that business as Louisiana State Optical of Lake Charles, Inc. Soon thereafter he decided to expand into Lafayette Parish. On July 15, 1979 he formed another corporation, Louisiana State Optical of Lafayette, Inc., which then opened stores in the cities of Lafayette and New Iberia.
On August 8, 1979 the Secretary of State issued to Louisiana State Optical of Lake Charles, Inc. certificates recording the trade names "Louisiana State Optical of Lake Charles, Inc.," "Louisiana State Optical of Lafayette, Inc.," and "Louisiana State Optical of Jefferson Parish, Inc." On November 13, 1979 the Secretary of State issued certificates showing that the trade mark "LSO" and the trade name "Louisiana State Optical" had been assigned to John C. Perroncel by W.N. Williamson and J.N. Cutrer.
According to the testimony, in 1978 Herbert Denmark was seeking to start a business and consulted his old friend Lloyd Perroncel, J.C. Perroncel's father. Lloyd told Herbert that his son's new optical business in Lake Charles was flourishing and advised him to talk to J.C. After meeting and talking to J.C. several times, Herbert Denmark decided to open an optical store.
In discussing a name for the new store, J.C. offered to let Denmark use the name "Louisiana State Optical in Jefferson Parish, Inc." Denmark accepted and in February 1979 he and other family members formed a corporation under that name. In May 1979 they opened their store in Metairie, using the trade name and trade mark at issue here.
According to J.C. Perroncel, his offer of the name to Denmark was predicated on an oral contract between them that they would be partners in opening other stores in the New Orleans area in the future. He testified he had reserved the use of the name "Louisiana State Optical of Jefferson Parish, Inc." in August 1979 with the specific intention of expanding into the New Orleans area in the future. Although Herbert Denmark offered him an interest in Louisiana State Optical of Jefferson when it was formed, Perroncel declined. He felt it was better if that first store belonged to the Denmarks entirely, but that future stores could be owned jointly. The theory was that all their stores in the New Orleans area could advertise together as "Louisiana State Optical," sharing expenses.
During the next few years, Perroncel visited the New Orleans area on occasion to look for potential store sites, but either was unable to find a suitable location or to finalize other arrangements to open a new store. (All the locations he investigated were in parts of the metropolitan area well removed from plaintiff's store, such as the West Bank or New Orleans East.) He said that several times he offered Herbert Denmark an interest in a new store but Denmark *997 declined. Finally Denmark told Perroncel he did not plan ever to go into business with him, because Denmark did not feel he could work well with Perroncel's sister and her husband, who would be involved in any new store. Perroncel testified that, upon learning this, he felt his agreement with Denmark for the use of the trade name was ended and he decided to open up a new store in Kenner.
According to Herbert Denmark, he and Perroncel had discussions about Perroncel's opening other stores in the New Orleans area, but there was never any agreement that they would be partners. He testified that in their discussions, he always insisted that such stores be located well out of plaintiff's market area. He denied that Perroncel had ever predicated use of the trade name on any partnership arrangement and said Perroncel never objected to the Denmarks' use of the name until Perroncel moved into their market area. Denmark said Perroncel told him the name was open and they were welcome to use it because other people were using it in the Baton Rouge area, just as Perroncel was using it in Lake Charles. Denmark said the only agreement they had was that if Perroncel opened other stores in the New Orleans area they would share advertising expenses.
Plaintiff presented certificates from the Secretary of State establishing that on June 9, 1983 Louisiana State Optical of Jefferson, Inc. recorded the trade marks "Louisiana State Optical" (three words top to bottom with the letters "LSO" boxed in, silhouette of eyeglass frame adjacent to the word "State") and "LSO" (vertical capital letters set in box). On November 7, 1983 plaintiff recorded the trade marks "L.S.O." and "Louisiana State Optical" with the Secretary of State.
Perroncel testified his corporations have spent in excess of $300,000 since 1978 advertising his stores in the Lake Charles and Lafayette-New Iberia areas. He admitted, however, that he never advertised in the New Orleans area prior to the opening of the Kenner store. Richard Triche, who is a co-owner with Perroncel of the Lake Charles corporation, testified neither the Lake Charles nor the Lafayette store had customers in the New Orleans area.
Tom Denmark, son of Herbert Denmark and current president of the plaintiff corporation, stated his store had spent about $45,000 through September 1983 advertising in the New Orleans area. Herbert Denmark testified plaintiff's store draws customers from all over the metropolitan area.
Priority of appropriation by use has long been the rule in determining which of opposing claimants is entitled to a trademark or trade name. A person may not use even his own name with the fraudulent intention of appropriating the good will of a business established and built up by another person of the same name. New Orleans Checker Cabs v. Mumphrey, 18 So.2d 629 (La.1944). However, both geographical names and words or terms designating or describing a trade or occupation or indicating a particular class of goods are in the public domain, not subject to exclusive appropriation; in ordinary circumstances no one is entitled to a monopoly of such names. Straus Frank Company v. Brown, 169 So.2d 77 (La.1964).
"However, when a geographic name or descriptive words constituting a trade name by long usage have acquired a secondary meaning, then the name identifies exclusively the particular business conducted by the user. Thus a superior right to its use may be acquired by the person who first adopted it, and he is entitled to protection under the law of unfair competition against unfair use thereof by a competitor. * * *"
Straus Frank Company v. Brown, supra, at 80.
Mere registration of a trade or service mark confers only procedural rights and does not create or confer substantive, proprietary rights of ownership in the mark; substantive rights in the mark arise only from use of it, not from registration. Givens Jewelers, Inc. v. Givens, 380 So.2d *998 1227 (La.App. 2 Cir.1980); Gallo v. Safeway Brake Shops of Louisiana, Inc., 140 So.2d 912 (La.App. 4 Cir.1962).
"The law is that, as between conflicting claimants to the right to use a trade mark, or name, priority of appropriation does not mean that he who first employed the mark or name at any place has the better right every place, but rather he who first employed the mark or name in a particular market has the better right in that market. * * *"
Dynasty Room, Inc. v. Whiskey-A-Go-Go, Inc., 186 So.2d 402, 404 (La.App. 4 Cir. 1966).
In Gallo v. Safeway Brake Shops of Louisiana, Inc., supra, the court stated at page 915 (quoting 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition Sec. 7),
"As a general rule, the adoption of a trade-mark does not project the right of protection in advance of the extension of the trade, or operate as a claim of territorial rights over areas into which it thereafter may be deemed desirable to extend the trade * * *.
"The right to its exclusive use extends only to those markets where the trader's goods have become known and identified by his use of the mark; and so one who has acquired a trade-mark and used it in a limited territory ordinarily does not thereby acquire a prior right to its use in an entirely different territory."
It is defendant's and intervenors' contention that they established prior appropriation of the name "Louisiana State Optical" within the state of Louisiana, by use of it in Lake Charles and Lafayette and by recordation of the trade name, "Louisiana State Optical of Jefferson Parish, Inc." with the Secretary of State. On the other hand, it is admitted that a third party conducts an optical business in Baton Rouge under the name "Louisiana State Optical of Baton Rouge."
Applying the law cited above to the facts of this case, we conclude the trial judge reached a fair and appropriate decision. We note that a primary factor cited in the jurisprudence is fraud or bad faith in appropriating a name already being used by another. Obviously, plaintiff appropriated the name with specific permission of J.C. Perroncel and without interference from either the Lake Charles or Lafayette corporations for four years. During that time plaintiff advertised as "Louisiana State Optical" within the greater New Orleans area.
Although plaintiff, through its president, Denmark, was aware that Perroncel desired to open more "Louisiana State Optical" stores in the metropolitan area, it is obvious that both sides envisioned these stores as being well away from the primary market area that plaintiff's store serves. It was not until Perroncel determined that Denmark definitely did not plan to go into business with him that he decided to open a store in Kenner and form the defendant corporation. In view of the locations he had viewed earlier, all considerably distant from plaintiff's store, we can only construe the opening of the Kenner store a mere 5 miles away as a deliberate attempt to capitalize on the business built up by plaintiff's advertising during the preceding four years.
Regardless whether Denmark actually had agreed to go into business with Perroncel earlier, there is insufficient proof that Denmark understood that Perroncel specifically predicated his offer of the use of the trade name on such dealings.
Considering the foregoing, the judgment of the district court is affirmed. Costs of this appeal are assessed against appellant.
AFFIRMED.