68 So.2d 648 (1953)
WHITE
v.
WHITE.
No. 3745.
Court of Appeal of Louisiana, First Circuit.
November 13, 1953.
Rehearing Denied December 18, 1953.
Writ of Certiorari Denied February 15, 1954.
*649 Hynes & Mathews, Baton Rouge, for appellant.
Major & Sanders, Baton Rouge, for appellee.
LOTTINGER, Judge.
This is a suit wherein the petitioner, W. G. White, Sr., d/b/a White's Auto Paint and Repair Shop seeks to enjoin the defendant, Nathan White, d/b/a White's Paint Shop from continuing the use of the trade name "White's Paint Shop" on the ground that the use of same constitutes unfair competition and misleads and confuses the public. The petition alleges that the plaintiff established his business under the trade-name presently used during the year 1935, and has since that time been consistently engaged in the business of painting automobiles and trucks in the City of Baton Rouge. It is further alleged that the defendant established his business in the City of Baton Rouge on or about December 1, 1952, and has continued to operate same as an automobile paint and repair shop from that time to the date of filing suit. Petitioner sets out further that the defendant adopted the trade-name under which he operates with the fraudulent intention of misleading the public and dealers and suppliers of automobile parts and equipment with a view of appropriating the good will of petitioner's business. He further complains that since the establishment of defendant's business much confusion has arisen among dealers and suppliers of automobile parts, paint and equipment in dealing with these two businesses. The petition then goes on to state in detail several instances where such confusion arose, setting forth that same was the result of a deliberate attempt on the part of the defendant in order to do business on the strength of the good reputation and credit rating of plaintiff.
A rule nisi was issued ordering defendant to show cause why a preliminary injunction should not issue restraining him from continuing the use of the trade-name "White's Paint Shop" or any other name reasonably calculated to cause confusion with the trade-name of the petitioner. The defendant filed an answer in the nature of a general denial and on the trial of the rule, for written reasons assigned, the lower court rendered judgment rejecting the plaintiff's demands and dismissing his suit.
In his written reasons for judgment, the trial judge found where the evidence established that on several occasions some confusion had arisen with various supply houses as a result of a similarity between the two trade-names. The trial judge, however, found no evidence that the defendant had misused either his own name or his trade-name in order to garner business or credit nor did he find where he had trespassed in any way upon the plaintiff's business or his good will. After carefully examining the record, we are convinced that the trial judge's findings in this respect are eminently correct. It is true that some confusion did arise insofar as telephone calls and transactions with supply houses are concerned; however, we find no evidence whatsoever that shows or tends to show any injury to the plaintiff insofar as his dealings with the public or his customers is concerned.
It will be noted at the outset, of course, that both parties to the suit have the surname "White", and, further, the trade name of each relates to the painting of automobiles. The case presents no disputed issue of fact and the only question for determination is whether legally the plaintiff is entitled to an injunction prohibiting the defendant, Nathan White, from using his own surname followed by the words "Paint Shop", to describe his business.
*650 Insofar as the use of the surname is concerned, we find that 52 Am.Jur., Trademarks, Tradenames, etc., § 64, page 547, lays down the rule as follows:
"In general, it may be stated that a person cannot obtain a monopoly in a trademark or tradename consisting of his name merely, so as to debar others having the same name from using it in their business. The right of a person thus to use his family name is regarded as a natural right, and he may put it on his own goods or otherwise employ it in his own business, notwithstanding another person of the same name may, in that name, manufacture and sell goods of the same kind."
Further, the above quoted authority, at Section 133, page 608, states the following:
"It has been pointed out in a prior section that one may not acquire an exclusive right to the use of his own family name as a trade mark or tradename as against another person of the same name. It follows that a charge of infringement or unfair competition cannot be predicated upon the bona fide or innocent use by an individual of his own name in his own business, even though such use may incidentally interfere or injure the business of another person or organization of the same or similar name."
In 47 A.L.R. 1189, 1190, we find the general principle stated as follows:
"It is the general rule that a natural person, in the absence of a self imposed restraint, has a right to the honest use of his family name in conducting any business, though such use may be detrimental to other individuals of the same name, or to corporations in the titles of which such name forms the whole or an integral part."
Also at 63 C.J., Trademarks, etc., § 118, the principle is stated as follows:
"In the absence of fraud, * * * everyone has a right to use his own name in his own business, either alone or in connection with others as in a partnership or corporation. The necessary and incidental inconvenience or loss thereby occasioned to others is damnum absque injuria, a person being liable only for the unlawful use of the name and for acts of unlawful competition."
The Louisiana Supreme Court in 1920, in the case of Tharp-Bultman-Southeimer Co. v. Tharp-Southeimer-Tharp, Inc., 147 La. 765, 85 So. 906, which case is very similar to the case at bar, stated the principle of law as follows:
"The weight of jurisprudence in this country sustains the doctrine that, in the absence of a contract restricting the exercise of such right (and the capacity for such restriction is limited), everyone may use his own name honestly, in his own business, and in the earning of his own livelihood and that of his family, but no one may lawfully resort to artifice or deceit for the purpose, or with the intent and effect of misleading or confusing the public and palming off his services, goods or products as that of another."
It will be noted that the above quoted authorities would not deny to a person the use of his family name as a tradename as long as the use of same is bonafide and without fraud. As previously set out in this opinion, the trial judge failed to find a fraudulent intent on the part of the defendant and in these findings we heartily concur.
Coming now to the use of the words "Paint Shop", we find the general rule stated in 63 C.J., Trademarks, Tradenames, etc., § 43, page 346, to be as follows:
"It is a fundamental rule that a term or mark merely descriptive of the subject to which it is applied cannot be a technical trade-mark or trade-name.

*651 Thus no word or combination of words can be exclusively appropriated if it is merely descriptive of the particular business, or of the quality, style, character, grade or class of the goods * * *."
We feel without hesitation that the words "Paint Shop" are merely descriptive of the business and under the above cited rule cannot be subject to exclusive appropriation as a trade-name. The trial judge came to this same conclusion and in the course of his written opinion, made the following pertinent comment.
"One has but to observe business firms, newspaper advertisements and telephone listings to note that there are any number of places in Baton Rouge being operated under the trade names such as `Auto Paint and Repair Shop', `Auto Paint Shop', `Auto Repair Shop', or `Service' and other combinations of words meaning the same thing. No doubt this is also true in any city of any size. If an injunction were to be granted in this case then some other person operating an auto paint and repair shop who may have started his business before 1935 could enjoin this plaintiff from using the same term."
The Louisiana Case most directly in point insofar as this is concerned, is that of Home Beverage Service, Inc., v. Baas, 210 La. 873, 28 So.2d 481, wherein our Supreme Court held as follows:
"At any rate, we deem it sufficient to rest our decision upon the conclusion that the trade name originally adopted by the plaintiff, Home Beverage Service, is only descriptive of the kind of business in which the plaintiff then was engaged, and that, conceding for the sake of argument that that term acquired to some extent a secondary meaning identifying the particular business of which the plaintiff was proprietor, the defendant has not been guilty of any unfair competition, such as representing his business establishment as being the same establishment of which the plaintiff was and is the proprietor."
Counsel for plaintiff in their brief seemed to derive much comfort in the case of Marcev v. Mandich, 158 La. 15, 103 So. 389, wherein the court held in part as follows:
"Infringement or unfair competition may result from the use of a part only of a trademark, tradename, or other trade indicia. Thus, the use of only one of the words which constitute a trademark may be sufficient to constitute an infringement without appropriating all the words included in it."
We have examined the above quoted authority and do not find same to be controlling here as it appears from the facts therein that the trade-name employed was that of "Marbel Hall Branch", a name which neither employed the surname of the owner nor was indicative of the business to which it applied.
It is also counsel for plaintiff's contention, that proof of malicious purpose or intent on the part of the offending party to trespass upon the plaintiff's business is not necessary in order to afford the plaintiff injunctive relief. We have examined the cases cited in support of this proposition and fail to find where such is the law. Indeed, the case of New Orleans Checker Cabs, Inc., v. Mumphry, 205 La. 1083, 18 So.2d 629, one of the cases cited by counsel in his brief, states the rule to be just the opposite, which is as follows:
"The law's protection against unfair competition by the use of another's trade name rests upon the deceit or fraud which the newcomer in the business practices, not only upon the one already established in the business but also upon the public. 63 C.J. p. 323." (Italics ours.)
Finally, with respect to the use of a surname, counsel for the plaintiff relies upon the holding of our Supreme Court in the case of Albrecht v. Del Bondio, 188 La. 502, 177 So. 587, wherein the plaintiff, d/b/a "Del Bondio, Real-Estate", was *652 granted an injunction against the defendant who was operating as "Del Bondio Co., Real-Estate". A reading of this case shows that the holding is not controlling here for the simple reason that there was involved therein a contract wherein defendant had sold exclusive use of her trade-name to the plaintiff and it was therefore held that she had no further right to its use.
Finding no manifest error in the judgment appealed from, the same is hereby affirmed.
Judgment affirmed.