278 So.2d 519 (1973)
COUHIG'S PESTAWAY COMPANY, INCORPORATED, Plaintiff-Appellant,
v.
PESTAWAY, INC., Defendant-Appellee.
No. 4179.
Court of Appeal of Louisiana, Third Circuit.
May 30, 1973.
Adams & Reese by Sam A. LeBlanc, III, New Orleans, and Bean & Rush by Warren D. Rush, Lafayette, for plaintiff-appellant.
*520 Piccione & Piccione by Peter C. Piccione, and Kaliste Saloom, Jr., Lafayette, for defendant-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
Plaintiff, Couhig's Pestaway Company, Incorporated, seeks a judgment enjoining defendant, Pestaway, Inc., from using the word "Pestaway" in its corporate name. Following a hearing on a rule, the trial court rendered judgment rejecting plaintiff's demand for a preliminary injunction, and plaintiff has appealed.
The issue presented is whether the corporate name adopted by defendant is the same as, or is deceptively similar to, the corporate name of plaintiff.
Plaintiff was incorporated in Louisiana on December 20, 1967, under the name "Couhig's Pestaway Company, Incorporated." It has engaged in the termite and pest control business for residences and commercial establishments since that date. This suit was filed on June 1, 1971, and at that time plaintiff was conducting its business solely in the parishes of East and West Feliciana, Pointe Coupee, East and West Baton Rouge. Tangipahoa, Ascension, Assumption, Terrebonne, Orleans and Jefferson. None of these eleven parishes is located adjacent to Lafayette Parish. Plaintiff has advertised its business, and in doing so it has emphasized the word "Pestaway" in its corporate name. It contends that the continued use of that word is important to its business.
Defendant was incorporated in Louisiana on April 14, 1971, under the name "Pestaway, Inc." It has operated a termite and pest control businsss for commercial establishments and residences since that time, but its operations have been confined solely to the Lafayette Parish area. Defendant also has advertised its business, and in doing so, it has emphasized the word "Pestaway" in its corporate name.
The record contains two certificates, issued by the Secretary of State for the State of Louisiana on June 24, 1971, certifying that on that date defendant had filed for record in the office of the Secretary of State copies of the Trade Mark and Service Mark "Pestaway," and that the applications for and facsimiles of that trade mark and service mark had been recorded in that office.
There has been no competition between the parties up to this time, since they have conducted their businesses in different areas of the state. Plaintiff contends, however, that it plans to expand its business as rapidly as it becomes economically feasible to do so, and that it recently conducted negotiations for the purchase of a competing pest control company in the Lafayette area, but that it had discontinued those negotiations because of the fact that defendant was using the name "Pestaway" in its advertisements.
The evidence presented at the hearing on the rule to show cause why a preliminary injunction should not be issued consisted largely of affidavits. One such affidavit, executed by J. R. Nelson, Assistant Secretary of State, recites that pursuant to the provisions of the Business Corporation Law of Louisiana, the office of the Secretary of State has the responsibility of checking names for corporate use, that that office did not consider the name "Pestaway, Inc.," as being deceptively similar to the name "Couhig's Pestaway Company, Incorporated," and that accordingly authorization to use the name "Pestaway, Inc.," was granted.
Plaintiff alleges that there is a significant likelihood of confusion or deception on the part of the buying public as to the two corporate names, and that as a result of this anticipated confusion, it fears that its former and prospective customers inadvertently will be misled by the deceptive similarity between the two names. It contends that it is entitled to judgment enjoining defendant from doing business in its *521 corporate name, under the provisions of LSA-R.S. 12:23.
LSA-R.S. 12:23 provides that the name of a newly formed corporation "... shall not be the same is, nor deceptively similar to, the name of any other corporation..." That section of the Revised Statutes also provides that "nothing in this section shall abrogate or limit the law as to unfair competition or unfair practice in the use of trade names," and that anyone interested or affected may "enjoin a corporation from doing business under a name assumed in violation of this section, although its articles may have been filed and recorded and a certificate of incorporation issued." See LSA-R.S. 12:23, pars. C and F.
Although plaintiff bases its demands for injunctive relief solely on the provisions of LSA-R.S. 12:23, we find that the test to be applied in determining whether defendant's corporate name is deceptively similar to plaintiff's name, is substantially the same test as is applied in determining whether a party has acquired a proprietary right to a trade mark or trade name and whether there has been an infringement of that right.
The question to be answered is: Considering the corporate names, as well as all of the circumstances surrounding the operation of the corporations themselves in the State of Louisiana, is there, in fact, any real likelihood of the public being confused or deceived by the alleged similarity of names? Guardian Life Ins. Co. v. Guardian National Life Ins. Co., 184 F. Supp. 851 (E.D.La.1960).
The registry of a trade mark or a service mark confers only procedural advantages, and not substantive rights. It confers no greater proprietary rights than exist without registration, and thus the registration by one party, or the lack of registration by the other, is not decisive as to the right of either party to use the trade mark or trade name. Gallo v. Safeway Brake Shops of Louisiana, Inc., 140 So.2d 912 (La.App. 4 Cir. 1962); Metalock Corp. v. Metal-Locking of Louisiana, Inc., 260 So.2d 814 (La.App. 4 Cir. 1972).
The determination made by the Secretary of State that the names of the two corporations are not deceptively similar is not conclusive or binding on the court, but it is persuasive and the acceptance of the corporate name by the Secretary of State is entitled to some weight. Guardian Life Ins. Co. v. Guardian National Life Ins. Co., supra; Standard Acc. Ins. Co. v. Standard Surety & Casualty Co., 53 F.2d 119 (S.D.N.Y., 1931); Sears, Roebuck & Co. v. All States Life Insurance Co., 246 F.2d 161 (5 Cir. 1957).
In the Guardian Life Ins. Co. case, supra, the plaintiff, Guardian Life Insurance Company of America, sought to enjoin defendant, Guardian National Life Insurance Company, a Louisiana corporation, from using the word "Guardian" in its corporate name. The suit was based solely on the ground that the names were deceptively similar, as prohibited by LSA-R.S. 12:4 (now LSA-R.S. 12:23), and by the Insurance Code. The court, however, did more than merely examine the names of the corporations to determine whether they were deceptively similar. It considered the activities of each corporation in the area and it inquired as to whether they were in competition with each other. The evidence showed that the defendant dealt exclusively in mortgage insurance, whereas plaintiff did not, and the trial judge thus found that there was no competition between the parties. Based largely on that finding, the court determined that the names were not deceptively similar, within the meaning of the Louisiana Corporate Name Statutes, and it rejected plaintiff's demands for the injunctive relief which it sought.
In Metalock Corp. v. Metal-Locking of Louisiana, Inc., supra, one of the issues presented was whether defendant's corporate name, "Metal-Locking of Louisiana, Inc.," was deceptively similar to plaintiff's *522 name, "The Metalock Corporation," in violation of LSA-R.S. 12:23. The Fourth Circuit Court of Appeal held that the names were not deceptively similar, and it affirmed the trial court judgment rejecting plaintiff's demands for an injunction. In reaching that decision, the court considered the fact that the words "Metalock" and "Metal-locking" were descriptive of a service, that is, a process of repairing cracks in metal castings, and it held that neither party was entitled to the exclusive use of those words based upon prior appropriation.
Act 267 of 1914, the original Business Corporate Act in Louisiana, provided that the name of a corporation "shall not be the same nor so similar as to cause confusion with the name of any other domestic corporation..." Shortly after that act was passed the "Title & Mortgage Guarantee Company, Limited," instituted suit against "Louisiana Abstract & Title Guarantee Company," for judgment enjoining the defendant from conducting business in its corporate name, on the ground that the names of the corporations were so similar as to cause confusion. Our Supreme Court rejected plaintiff's demands, pointing out that the names of the two corporations are not identical. The court said "The said words ("title guarantee") are descriptive of the kind of business done by said companies ... The organizers of the defendant company naturally had the right to include in the name of their company these words descriptive of their business... The defendant company had the perfect right to do everything the petition alleges it did." Title & Mortgage Guarantee Co. v. Louisiana A. & T. G. Co., 143 La. 894, 79 So. 529 (1918).
In United Dist., Inc. v. United Dist. of Shreveport, Inc., 273 So.2d 871 (La.App. 2 Cir. 1973), the plaintiff corporation, United Distributors, Inc., sought to enjoin defendant, United Distributing of Shreveport, Inc., from using the words "United" and "Distributing" in its corporate name, under LSA-R.S. 12:23 and LSA-R.S. 12:303. The reviewing court recognized that the words used were "descriptive of the kind of business involved and therefore could not be exclusively appropriated," but it overruled defendant's exception of no cause of action and remanded the case for trial on the question of whether the name had acquired a "secondary meaning" and whether defendant was "guilty of unfair competition."
The case of Straus Frank Company v. Brown, 246 La. 999, 169 So.2d 77 (1964), did not involve an interpretation of LSA-R.S. 12:23, but it did present issues as to whether plaintiff had acquired the exclusive right to use the trade name "Lake Auto Parts," and whether it was entitled to judgment enjoining defendant from using the name "Lake Auto Supply." Our Supreme Court observed that the word "Lake" was a geographic term, and that the word "Auto" designated the class of goods with which the businesses dealt. It held, in effect, that words of that type are in the public domain and that they are not subject to exclusive appropriation, unless they have acquired a secondary meaning. The court held, however, that even where such words have acquired a secondary meaning, injunctive relief cannot be obtained by the party first appropriating them unless fraud is shown on the part of the defendant. No fraud was shown in the Straus Frank case, and plaintiff's demand for an injunction thus was rejected.
In Home Beverage Service v. Baas, 210 La. 873, 28 So.2d 481 (1946), the plaintiffs were engaged in business under the trade name "Home Beverage Service" or "Home Beverage and Food Service." The Supreme Court rejected their demands for injunctive relief against defendant, who began doing business under the trade name "Victory Home Beverage Service." The court said:
"Our conclusion is that the trade name originally adopted by the plaintiff, Home Beverage Service, is only descriptive of the kind of business in which both the *523 plaintiff and the defendant are engaged, and therefore was not subject to exclusive appropriation by the plaintiff. Conceding however that by the plaintiff's use of the combination of words as a trade name for the period of 11 years and 7 months before the defendant entered into the same kind of business the plaintiff's trade name had acquired then a secondary meaning, identifying the particular business of which the plaintiff was the proprietor, our finding is that the defendant was not guilty of unfair competition, specifically, of any representation that the business establishment conducted by him was the establishment owned and conducted by the plaintiff. The result of this finding is that the plaintiff has no right to prevent the defendant from using the trade name Victory Home Beverage Service."
Our brothers of the First Circuit Court of Appeal have held that the trade name "White's Paint Shop," is not deceptively similar to the name "White's Auto Paint and Repair Shop." The court reasoned that the words "Paint Shop" were merely descriptive of the business and thus were not subject to exclusive appropriation as a trade name. White v. White, 68 So.2d 648 (La.App. 1 Cir. 1953).
In State v. Conway, 189 La. 272, 179 So. 312 (1938), the court held that the corporate name of relator, "Equitable Securities Corporation of Nashville," was not deceptively similar to the name of respondent, "Equitable Securities Company, Inc.," and judgment was rendered directing the Secretary of State to issue to relator a certificate of authority to do business in this State. The court said:
"We fail, therefore, to see wherein the names of the two corporations are `deceptively similar,' as alleged by the Secretary of State in his answer in this case. The addition of the term `of Nashville' to relator's corporate name, in our opinion, clearly designates that corporation as a foreign corporation, and plainly distinguishes it from relator, a domestic corporation, so as to avoid confusion both to the public and in the records of the office of respondent Secretary of State."
In Continental Ins. Co. v. Martin, 213 La. 147, 34 So.2d 405 (1948), the plaintiff "Continental Insurance Company," sued to enjoin the Secretary of State from issuing a certificate of authority to engage in business to "Continental Fire and Casualty Insurance Corporation," a Texas corporation, on the grounds that the corporate names of the companies were deceptively similar. The applicable law (Act 116 of 1946) provided that the corporate name of a foreign insurance company desiring to qualify to do business in this state "shall not be the same as, nor deceptively similar to, the name of any other ... insurance corporation authorized to do business in this state." The Supreme Court held that the Secretary of State had not abused the power vested in him in issuing the certificate of authority to do business to the Texas Corporation.
Plaintiff cites and relies to some extent on the case of Dynasty Room, Inc. v. Whiskey-A-Go-Go, Inc., 186 So.2d 402 (La.App. 4 Cir. 1966). In that case plaintiff operated a business under the trade name "Whisky-A-Go-Go." Defendant later formed a corporation with the name "Whisky-A-Go-Go, Incorporated," and began operating a business under that corporate name. The court found that plaintiff had acquired a proprietary right to use the trade name, and that defendant had infringed on that right. The reviewing court thus affirmed the judgment of the trial court granting plaintiff the injunctive relief which it sought.
We distinguish the Dynasty Room case, supra, from the instant suit. In that case the names of the two businesses were identical, except that in one the word "Incorporated" was added. The principal part of the name, "Whisky-A-Go-Go," was a coined term, and defendant was attempting *524 to use it in the same area where plaintiff had been conducting business. The court found that defendant had "intentionally endeavored to capture plaintiff's trade name and compete with plaintiff in an identical business," and thus that defendant was guilty of fraudulent practices. None of these circumstances are present in the instant suit. Here, the names of the two corporations are not identical, and the parties are not conducting business in the same area. Plaintiff concedes that its corporate name has not acquired a secondary meaning, and there has been no showing of fraud in this case. We find, therefore, that the Dynasty Room case is not applicable here.
In the instant suit the names of the two corporations are clearly different. One is named "Couhig's Pestaway Company, Incorporated," and the other "Pestaway, Inc." Plaintiff has four words in its name, while defendant has only two. The only word used in common by the parties is the word "Pestaway." To that word, however, plaintiff has added "Couhig's" and "Company," and it has spelled out the word "Incorporated." Defendant has used the abbreviation, "Inc.," and it has not included the words "Couhig's" or "Company," or any similar names which could deceive anyone. It is apparent, therefore, that the names of the corporations, when considered above, are not deceptively similar.
We also feel that the name "Pestaway" is descriptive of the type of business which is being conducted by the corporations. That term is composed of two words, "Pest" and "away," and while the two words may not often be used together in that fashion, there is no question but that this combination of commonly used words is designed to, and it does, inform the public clearly that the corporation using that name is engaged in the business of exterminating or controlling pests.
Applicable here is the reasoning in Allstate Insurance Company v. Allstate Investment Corporation, 210 F.Supp. 25 (W. D., La.1962), where the court pointed out that the word "Allstate" is composed of the words "all" and "state," that it thus is a descriptive term, and that in order for plaintiff to have obtained a proprietary right to it, the word must have acquired a secondary meaning. We have already noted that in White v. White, supra, the term "Paint Shop" was found to be a combination of existing words which were descriptive of the business, and that it thus was not subject to appropriation unless it had acquired a secondary meaning. And, in Tefas v. Gatzoulas, 17 La.App. 276, 135 So. 693 (2 Cir. 1931), it was held that "the words `Coney Island' should be considered as descriptive of the business in which plaintiff was engaged and of the class of food sold by him, and that such words could not be appropriated as a trade-name."
In this case plaintiff does not contend that the word "Pestaway" has acquired a secondary meaning, or that defendant is guilty of fraud or of unfair business practices.
Our conclusion in the instant suit is that the names "Couhig's Pestaway Company, Incorporated," and "Pestaway, Inc.," are not the same, that they can easily be distinguished, and that there is little likelihood of the public being confused or deceived by the alleged similarity of names. We find that the term "Pestaway" is merely descriptive of the type business in which both parties are engaged, that it has not acquired a secondary meaning, and that no fraud or unfair business practice on the part of defendant has been shown. We thus find no error in the judgment of the trial court rejecting plaintiff's demand for a preliminary injunction.
For the reasons assigned, the judgment appealed from is affirmed, and the case is remanded to the trial court for further proceedings consistent with the views herein expressed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.